IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :

　　　v.                         :        CRIMINAL NO. 25-255

DANIEL BEEBIE                   :

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Daniel Beebie pled guilty to an information charging him in Counts One through Three with tax evasion in violation of 26 U.S.C. § 7201 for tax years 2018, 2019, and 2020 and in Counts Four through Six with willful failure to file tax returns in violation of 26 U.S.C. § 7203 for each of these tax years. The defendant acknowledged at his plea hearing that he failed to file tax returns for these years, despite knowing that he was required to do so, and that he evaded paying his taxes by, among other things, purposefully supplying his accountants with incomplete information, using check cashers to hide business income, and minimizing his business income by using funds due to his business to pay off personal loans so that the profits he received would not be reflected in his businesses' bank records. The defendant's actions resulted in tax losses of $274,540 for 2018, $95,490 for 2019, and $74,520 for 2020, for a total tax due of $444,540 for those tax years.

For these reasons, as well as for the reasons provided below, the government recommends a prison sentence within the advisory guideline range of 12 to 18 months' imprisonment, absent any basis for a below-guideline sentence addressed in the supplemental sealed attachment to this sentencing memorandum.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025). At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

## I.    BACKGROUND

On July 24, 2025, the defendant pled guilty to three counts of tax evasion in violation of 26 U.S.C. § 7201 for tax years 2018, 2019, and 2020 and three counts of willful failure to file tax returns in violation of 26 U.S.C. § 7203 for each of these tax years. The defendant admitted that he had knowingly not filed tax returns for those years in order to evade paying income tax he knew that he owed.

As explained in greater detail in the Presentence Report and the government's plea memorandum, the defendant acknowledged that during the period covered by the information, he was a contractor in the construction industry, and that he owned multiple businesses, including City Builders LLC, City Framers LLC, Stateside Builders LLC, 2310-12 Amber St. LLC, 1720-26 Waterloo St. LLC, 2801 Frankford St. LLC, and City Developers LLC. He was also a member or the sole member of approximately fourteen additional businesses.

*Beebie's Accounting Firms*

Beebie hired two different accounting firms to prepare his taxes for tax years 2013 through 2022. The first firm was Accounting Firm One, which was owned by Accountant One-A, who was also Beebie's mortgage broker. Beebie also worked with Accountant One-A's employee, Accountant One-B. Beebie ended his relationship with Accountant One-A prior to hiring his second accounting firm, Accounting Firm Two, in January 2021.

Accountant One-A's employee, Accountant One-B, prepared Beebie's personal returns for 2015 (filed on or about May 10, 2017) and 2016 (filed on or about May 9, 2017). These returns, which were filed electronically, are the only personal federal tax returns that Beebie actually filed dating back to at least 2013. The reason that these returns were filed was because Beebie and his wife were applying for a mortgage from a lender through Accountant One-A, the mortgage broker. In 2017, Beebie was aware that in order to obtain the mortgage for the purchase of his approximately $1.1 million home, he had signed authorization documents that entitled the mortgage company to obtain transcripts of his tax returns for those years, including Forms 4506T, Request for Transcript of Tax Return.

In addition to preparing Beebie's personal 2015 and 2016 returns in 2017, Accounting Firm One also prepared Beebie's 2013 and 2014 Form 1040s. Accountant One-A sent copies of

the returns for 2015 and 2016 to Beebie. He sent the original 2013 and 2014 returns to Beebie and explained that these returns could not be filed electronically because they were too overdue, and Beebie would need to file them by mail. Beebie, however, never filed either of these earlier returns.

Although Accountant One-A made multiple attempts to contact Beebie and to obtain records from him so that Beebie's tax returns for tax years 2017, 2018, and 2019 could be filed, Beebie never provided those records. Accountant One-A was therefore unable to prepare Beebie's returns for those years, and Beebie did not file any returns for those years. Beebie ended his relationship with Accountant One-A in or about late 2020.

Beebie ended his relationship with Accounting Firm One prior to hiring his second accounting firm, Accounting Firm Two, on or about January 7, 2021. Beebie worked with multiple accountants at Accounting Firm Two, including a senior accountant, a partner, and two other accountants. None of these accountants were able to obtain sufficient information to file personal returns for Beebie. One of the accountants requested that Beebie send documents, but often did not receive a response. Beebie did provide a second accountant at the firm with bank statements and canceled checks for his company Stateside Builders, which resulted in the filing of returns for this entity for tax years 2019 and 2020. That accountant did not prepare returns for any of Beebie's other companies, or for Beebie's personal returns, due to Beebie's failure to provide records. A third accountant at the firm was unable to file business returns for Beebie as the records that Beebie's employees provided did not reconcile with files maintained by Accounting Firm Two.

Accounting Firm Two ended their relationship with Beebie on or about March 7, 2023, due to Beebie's failure "to maintain adequate communication with our staff and accountants to

- 4 -

sufficiently complete the necessary work," and because Beebie's "delayed response time and lack of information made it impossible to complete and file additional years." Accounting Firm Two did not file any personal returns for Beebie.

<u>*Beebie's Acts of Evasion*</u>

Beebie committed multiple acts of evasion pertaining to tax years 2018, 2019, and 2020, including the following:

(a)    As explained above, Beebie provided inaccurate records and frequently provided no records at all to his accountants.

(b)    Beebie disguised personal expenses as business expenses.  On July 11 and 12, 2018, Beebie closed on two properties that were owned by two of his limited liability companies: 2801 Frankford Ave. and 2310 Amber Street. The closing documents reflect that a significant amount of the proceeds from the sales of these properties—approximately $105,000 from the sale of the Frankford Ave. property and $177,000 for the Amber Street property—that should have been distributed as income to those companies was instead used to pay off two of Beebie's personal debts. As a result of using money owed to his companies to pay off his personal loans, in a two-day period Beebie caused his business records to reflect that his business had approximately $282,000 less taxable income than those businesses actually received.

(c)    Beebie hid income by using check cashers in two ways. The first way was by writing checks from one of his companies to a different company that he controlled. Rather than depositing the check in the bank account of the payee company, however, Beebie would pay a substantial fee to cash the check at a check casher. In 2018, he cashed seventeen checks made out from one of his companies to another of his companies totaling approximately $146,100 at check cashers and paid at least $1,271.50 in fees that he could have avoided if he had cashed the

checks at a bank. In 2019 he cashed sixteen checks totaling approximately $109,050 at check cashers and paid $1,224.75 in fees. By engaging in this process, Beebie was able to avoid reporting financial information to the IRS, which assisted him in evading the payment of taxes.

Beebie also used a check casher to cash checks that were written to his companies by other businesses that were not his, thereby avoiding having any of this income appear in his bank accounts, and making it difficult for the IRS to learn of this income. Between February 7, 2018 and December 4, 2018, Beebie cashed checks totaling $61,596.16 and paid fees totaling $543.30 at one check cashing business. On October 28, 2019, Beebie cashed one check for $21,664.76 at that same check cashing service and paid a fee of $303.31. Between January 29, 2020 and September 9, 2020, Beebie cashed $95,555 from checks he received from businesses and customers and paid $1,282.05 in fees.

### Other Tax Issues

Beebie also failed to pay other taxes. Although he did file and pay most of the federal taxes due on his 2015 and 2016 returns by June 2017, he owed additional money due to the late filing of the 2015 return. The IRS sent letters to Beebie's home address regarding amounts due for 2015 every year between 2017 and 2022 except for 2021, and IRS collections sub-contractor ConServe sent three additional letters to Beebie and made twenty-eight phone calls to him between August 2019 and October 2020. They successfully reached him once in January 2020, but Beebie hung up after the representative informed him that she was calling on behalf of the IRS. Beebie did not pay off his 2015 tax debt until after he received the 2022 letter from the IRS.

In addition to not filing his federal returns or paying his federal taxes, Beebie also did not pay state and local taxes and fees. The Pennsylvania Department of Revenue filed a tax lien against Beebie in August 2018 for unpaid state taxes of approximately $17,000. These taxes

were not paid until January 2022. Beebie also failed to pay property taxes for a property located in Churchville, Pennsylvania. Many liens were filed against the property for unpaid taxes dating back to 2017, and he owed a total of county, township, and school taxes of $29,945.69 for the period from January 2017 through December 2021. Beebie paid off this bill in January 2022.

*Personal Expenses*

During the period included in the indictment, tax years 2018 through 2020, Beebie and his family lived in a home in Bucks County that they purchased in 2017 for $1.1 million. He and his wife had several automobiles, as well as a yacht that they purchased in 2018 and 2019 for at least $110,000. During 2017 and 2018, Beebie spent approximately $297,000 on hockey and concert tickets.

*Tax Loss Calculation*

The IRS has calculated that Beebie's businesses had gross receipts of $5,051,077 for 2018, including unreported income from the checks that Beebie cashed at a check casher and the direct repayment of loans that Beebie received through business sales. He had business expenses of $4,143,481. He had gross receipts of $3,955,687, including unreported income from checks cashed at check cashing services, and business expenses of $3,541,705 for 2019. He had gross receipts of $1,127,674, and expenses of $738,570 in 2020. His taxes due for 2018 were $274,536, for 2019 were $95,486 and for 2020 were $74,515. The total tax due for years 2018, 2019, and 2020 is therefore $444,537. To date the defendant has not made any payments for these tax years, and it appears that he has not filed returns for tax years 2021 through 2024.

II.    **SENTENCING CALCULATION**

A.    **Statutory Maximum Sentence**

The total maximum sentence is 18 years' imprisonment, three years' supervised release, a

$1,050,000 fine, and a $375 special assessment. Full restitution of as much as $444,537 may also

be ordered.

B.    **Sentencing Guidelines Calculation**

The Probation Office correctly calculated the defendant's advisory guideline range as

follows:

| | |
|---|---|
| Base offense level, USSG §§ 2T1.1 2T4.1(G) (tax loss more than $250,000 but not more than $550,000) | 18 |
| Acceptance of Responsibility, USSG § 3E1.1(a) | -2 |
| Assisting in prosecution of own misconduct, USSG § 3E1.1(b) | -1 |
| Zero point offender, USSG § 4C1.1 | <u>-2</u> |
| Total offense level | 13 |

Guideline level 13, Criminal History Category I results in a sentencing range of 12 to 18 months'

imprisonment.

III.    **ANALYSIS**

The Supreme Court has declared: "As a matter of administration and to secure

nationwide consistency, the Guidelines should be the starting point and the initial benchmark."

*Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual

sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and

impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting

*Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original).

"Common sense indicates that in general, this system will steer district courts to more within-

Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

### A.    Consideration of the 3553(a) Factors

#### 1.  The Nature and Circumstances of the Defendant's Crimes

The defendant engaged in a serious offense. He evaded filing or paying his taxes for the three years charged in the indictment by, among other things, failing to provide documents to his accountants, using check cashers to avoid showing income, and hiding his income by using income that should have been attributable to his businesses to pay his personal debts, causing a tax loss for those years of $444,537. He also failed to file tax returns in any year going back to 2013 until today, except for 2015 and 2016 when he knew he needed returns to be filed for those years in order to get a mortgage. Although the defendant was not filing or paying taxes, he was spending money on real estate, a yacht, cars, and hockey and concert tickets. It should also be

noted that the defendant has not filed returns for tax years 2021 through 2024. For these reasons, as well as to deter others from engaging in the same type of tax evasion, a sentence within the guideline range is appropriate.

### 2. The History and Characteristics of the Defendant

The defendant is 42 years old. He had a happy childhood, and although his father passed away, he is close with his mother and two sisters. He appears to be in a solid marriage and has four daughters with whom he is actively involved in their upbringing. He owns multiple businesses and is currently working on a large project for which he is receiving a substantial draw each month.

Neither the defendant's history nor personal characteristics provide the basis for a variance from the sentencing guidelines.

### 3. The Need for the Sentence Imposed To Reflect the Seriousness of the Offense, To Promote Respect for the Law, and To Provide Just Punishment for the Offense

The offense in this case is serious, as the defendant has failed to file personal income tax returns or pay income taxes for 10 of the last 12 tax years. A guideline sentence would provide just punishment and reflect the seriousness of the offense and promote respect for the law.

### 4. The Need for Adequate Deterrence and Protect the Public from Further Crimes by the Defendant

In this case there is a need for a sentence that provides both individual and general deterrence. Individual deterrence is required for this defendant as nothing thus far other than the need to file returns to obtain a mortgage has caused the defendant to take the requirement that citizens must file tax returns and pay taxes seriously. Also, the need for deterrence under Section 3553(a) is not limited to deterrence of a particular defendant. *See, e.g.*, *United States v. Jordan*, 435 F.3d 693, 698 (7th Cir. 2006) (describing how Section 3553(a) "specifies that the court may

consider the need for general deterrence and respect for the law"); *United States v. Glover*, 431 F.3d 744, 751 (11th Cir. 2005) (noting that pre-*Booker* and post-*Booker*, "the underlying goals of the statute and the Guidelines are retribution, general deterrence, incapacitation, and rehabilitation" (internal quotation marks omitted)); *see also United States v. Yeaman*, 248 F.3d 223, 232 (3d Cir. 2001) (referring to Section 3553(a)'s goals of "general deterrence, specific deterrence, retribution, and rehabilitation"). This need for general deterrence is particularly pronounced in criminal tax cases, since many others might be tempted to violate the tax laws if they conclude that willful violation of them will not be punished.

### 5.   The Need To Avoid Disparities

While every case is unique, the government's recommended sentence will avoid unwarranted sentencing disparities. The guidelines themselves "are designed to restrain unwarranted disparities." *United States v. Sample*, 902 F.3d 1196, 1201 (10th Cir. 2018) (citing *Gall v. United States*, 552 U.S. 38, 54 (2007)). That is what the government requests here. 18 U.S.C. § 3553(a)(4), (a)(6). The guidelines here appropriately account for the defendant's conduct and reflect potentially mitigating factors. They account for the defendant's lack of criminal history by assigning him a criminal history category of I and applying the Zero Point Offender reduction.

### 6.   Educational or Vocational Training and Medical or Correctional Treatment

The defendant has some college. He is an experienced contractor and does not need educational or vocational training. He currently receives $15,000 a month from a "draw" from a large construction project in which he is involved. He also is a 30 percent owner of a coffee roasting company, but does not currently receive any funds from that company. The defendant does not need medical or mental health care.

### 7.  The Kinds of Sentences Available

As stated previously, the defendant is subject to a prison sentence. He could receive supervised release. He could receive a fine. A special assessment of $600 is mandatory.

### 8.  Restitution

Restitution of $444,537 was agreed to in the plea agreement.

\*                          \*                          \*

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition in this case of a within-guideline sentence. As noted, the Sentencing Guidelines present "the lodestone of sentencing," *Peugh*, 569 U.S. at 544, and that guide is once again persuasive in this case.

### B.     Supervised Release

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to

promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a term of supervised release of three years is warranted. A term of supervised release will aid the defendant's reentry to society, and will advance the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B). Importantly, a term of supervised release is needed to ensure that the defendant remains current on his tax filings and payments, and he makes payments for restitution to the victim of his crimes, § 3553(a)(7).

This assessment also supports imposition of all of the mandatory and standard conditions of supervised release listed in Section 5D1.3, as well as these additional conditions: The defendant shall disclose all of his financial records to the Probation Office and should not open any new credit charges.

## IV.   CONCLUSION

The government's final recommendation regarding sentencing appears in the sealed attachment.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s/ Judy Smith*
JUDY SMITH
Assistant United States Attorney

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this Sentencing Memorandum has been served by email on Michael Engle, Esq. at mengle@stradley.com.


       <u>/s Judy Smith</u>

       JUDY SMITH
       Assistant United States Attorney


DATED: <u>March 30, 2026.</u>

- 14 -